RECEIVED

SEP 2 6 2005

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| JOHN GUILLORY | CIVIL ACTION NO. 04-2148 |
| VS. | JUDGE MELANÇON |
| JO ANNE BARNHART, Commissioner Social Security Administration | MAGISTRATE JUDGE METHVIN |

## REPORT AND RECOMMENDATION

Before the court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be **REVERSED** and that Guillory be awarded benefits consistent with an onset date of January 12, 2001.

### *Background*

Born on October 23, 1971, John Guillory ("Guillory") is a 33 year-old claimant with a ninth grade education. Guillory worked in the past as a cement finisher, warehouse worker, electrician's helper, housekeeper, and a galley hand. On June 26, 2001, Guillory applied for disability insurance benefits and supplemental security income, alleging disability due to nervousness, paralyzed radial nerve in his arm, and high blood pressure.[1] Guillory's application was denied on initial review, and an administrative hearing was held on August 11, 2003.[2] In an opinion dated November 26, 2003, the ALJ determined that Guillory is not disabled because he is able to perform a significant range of sedentary work and there are other jobs that exist in

---

[1] Tr. 56-76, 403-403B. Guillory originally alleged an onset date of June 12, 1999, however, he amended his onset date to January 12, 2001. Guillory filed a previous application alleging disability due to the radial nerve problems, which was denied.

[2] Tr. 404-431.

significant numbers that Guillory could perform.[3] The Appeals Council denied review and Guillory timely filed this appeal.

### *Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record; and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen, 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

### *Procedure for Analysis of Impairments and the ALJ's Findings*

In determining whether a claimant is capable of performing substantial gainful activity, the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §404.1520(b)-(f) (1992):

1. If a person is engaged in substantial gainful activity, he will not be found disabled regardless of the medical findings.

---

[3] Tr. 12-20.

2. A person who does not have a "severe impairment" will not be found to be disabled.

3. A person who meets the criteria in the list of impairments in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.

4. If a person can still perform his past work, he is not disabled.

5. If a person's impairment prevents him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

When a mental disability claim is made, the Commissioner utilizes a corollary sequential procedure for determining the merits of the claim. Essentially, this procedure substitutes specialized rules at Step 2 for determining whether a mental impairment is severe, and also provides detailed guidelines for making the Step 3 determination as to whether the mental impairment meets or exceeds the Listings. The procedure can be summarized as follows:

1. The ALJ must first evaluate the claimant's pertinent symptoms, signs, and laboratory findings to determine whether he or she has a medically determinable mental impairment. Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004),[4] citing 20 C.F.R. §404.1520a(b)(1).

2. If a medically determinable mental impairment is found, the ALJ must then rate the degree of functional limitation resulting from the impairment. Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004), citing 20 C.F.R. §404.1520a(b)(2). To perform this latter step, the ALJ should assess the claimant's degree of functional limitation in four areas: (1) activities of daily living; (2) social functioning; (3) persistence or pace of concentration; and (4) episodes of decompensation. See C.F.R. §404.1520a(c)(3). If the degree of limitation in the first three functional areas is "none" or "mild," and "none" in the

---

[4] The undersigned was unable to find any Fifth Circuit cases setting forth the proper procedure for analyzing mental disability claims since the revisions and amendments to 20 C.F.R. §404.1520a in 2000. The revisions and amendments became effective on September 20, 2000. 65 Fed. Reg. 50,746 (August 21, 2000). See Boyd v. Apfel, 239 F.3d 698, 705 n.11 (5th Cir. 2001). The Serrano-Diaz decision is therefore cited as the most succinct summary of the current law that the undersigned was able to find during research for this report and recommendation.

fourth area, the ALJ will generally conclude that the impairment is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities. Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004), citing 20 C.F.R. §404.1520a(d)(1).

3. When a severe mental impairment is found, the Commissioner determines whether the impairment meets or exceeds the requirements of the Listings. Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004), citing 20 C.F.R. §404.1520a(d)(2) (2002).

4. When the severe mental impairment does not meet Listing requirements, the Commissioner then assesses the claimant's residual functional capacity. Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004), citing 20 C.F.R. §404.1520a(d)(3) (2002).

The procedure states that if the degree of limitation in the first three functional areas is "none" or "mild," and "none" in the fourth area, the ALJ will generally conclude that the impairment is not severe, *unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities.* Serrano-Diaz v. Barnhart, 2004 WL 2431693, *6 (E.D.Pa. 2004), citing 20 C.F.R. §404.1520a(d)(1). In the Fifth Circuit, courts adhere to the standard set forth in Stone v. Heckler, 752 F.2d 1099 (5th Cir.1985) in assessing the severity of an impairment. In Stone, the Fifth Circuit declared that severity of an impairment must always be determined with regard to an individual's *ability to perform substantial gainful employment,* and cannot be based on medical severity alone. Moreover, the Fifth Circuit articulated the correct severity standard as follows:

> [A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.

Stone, 752 F.2d at 1101. The court further stated that "[W]e will in the future assume that the ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) (1984) is used." Id. at 1106.

In the instant case, the ALJ determined that Guillory has the following severe impairments: "residuals from a left hand and arm injury, status post surgery and chronic low back pain, caused by a herniated disc at L3-4." The ALJ assessed Guillory's residual functional capacity and concluded that Guillory could perform a significant range of sedentary work. Based on the testimony of a vocational expert, the ALJ concluded that there were jobs existing in the national economy which Guillory could perform, and therefore, he was not disabled.

### *Assignment of Errors*

Guillory alleges the following errors: 1) the ALJ failed to find that Guillory meets a listed impairment; 2) the ALJ failed to find that Guillory's depression is severe; 3) the ALJ erred in assessing Guillory's residual functional capacity; and 4) the ALJ erred in relying upon the testimony of the vocational expert.

### *Findings and Conclusion*

I. **Medical History**

In 1998, Guillory suffered a laceration of his forearm that completely severed the left radial nerve, resulting in loss of function and weakness of the left hand grasp.[5] Subsequently, however, Guillory was able to return to work as a cement finisher.

---

[5] Tr. 189, 193.

On January 12, 2001, Guillory fell into a hole while working. Guillory was examined at Lafayette General Medical Center on January 13, complaining of low back pain.[6] X-rays of the lumbar spine were normal. On February 2, 2001, Guillory was examined by Dr. Louis Blanda Jr., an orthopaedic surgeon.[7] Dr. Blanda recommended that Guillory undergo a course of physical therapy and a lumbar MRI. Guillory's employer referred him to Dr. Joe Morgan, an orthopaedic surgeon, in order to determine whether an MRI was necessary.[8] Dr. Morgan determined that Guillory had made a complete recovery and he could return to work as a cement finisher. Subsequently, Guillory was referred for an Independent Medical Examination (IME) with Dr. Thad Broussard, an orthopaedic surgeon, who concluded that it was reasonable for Guillory to have an MRI performed in order to have objective evidence regarding his medical condition.[9]

An MRI conducted on June 14, 2001 showed, "Abundance of epidural fat causing the theca to appear rather small through its extent. Central disc herniation at L3-4."[10] In October, 2001, Guillory underwent an epdiural injection, which did not relieve his pain. On October 23, 2001, Dr. Blanda recommended that Guillory undergo a L3-4 diskectomy with

---

[6] Tr. 217-225.

[7] Tr. 229-230.

[8] Tr. 240-243.

[9] Tr. 248.

[10] Tr. 250.

pedicle screw fusion.[11] While waiting for insurance approval of surgery, Guillory continued treatment with Dr. Blanda.[12]

On December 29, 2001, at the request of Disability Determination Services ("DDS"), Guillory was examined by Dr. Leandre Odom.[13] Dr. Odom noted that straight leg raises were normal, but that Guillory had decreased flexion and side bending.

On May 31, 2002, an MRI of the lumbar spine was performed, showing significant central and right sided disc herniation at L3-L4. Based on the MRI results, Dr. Blanda referred Guillory to Dr. James Domingue, a neurologist, for consultation. Dr. Domingue found that Guillory's symptoms were appropriate for the disc herniation, but before surgical intervention, a myelogram and CT scan were necessary in order to have a better view of the problem area.[14] On July 31, 2002, a lumbar myelogram and CT scan were performed, indicating that at L3-4 Guillory had: "central accentuated soft tissue protrusion creating significant spinal stenosis with multiple nerve root displacement" and "central broad-based disc bulge with displacement of the L4 nerve roots."[15] On September 24, 2002, Dr. Domingue reported to Guillory's employer's insurance carrier:

> I reviewed the imaging studies done on 7-31-02. His lumbar myelogram shows a significant anterior compression of the thecal sac at L3-4 with bilateral cutoffs of the exiting nerve roots. The same thing is seen on the post-myelogram CT scan. I think there is bilateral extension into the neural foramina.

---

[11] Tr. 278.

[12] Tr. 276-304..

[13] Tr. 253-255.

[14] Tr. 307-309.

[15] Tr. 294.

8

I think Mr. Guillory should undergo laminectomy and discectomy at L3-4.[16]

On March 15, 2002, Guillory was examined by Dr. W.J. Briley, an internist, at the request of the DDS.[17] Dr. Briley concluded:

> Job related back injury. Pain. Exam is definitely abnormal as noted above. Markedly decreased range of motion, positive straight leg raising, depressed ankle jerk on right, unable to extend right great toe. Appear sincere about answers. Walks with a limp and uses a cane/assistive device to ambulate. According to MRI, has herniated disc L3-L4. Dr. Blanda, orthopaedic surgeon, is in process of getting permission from insurance company for surgery.
>
> Left hand. History of injury. Laceration of left forearm with laceration of radial nerve. Some residual loss of function left hand grasp.
>
> High blood pressure as recorded. Should be able to control easily.
>
> Obesity, pathological, which aggravates all the above problems.
>
> I find the above physical abnormalities would restrict this person's ability to do work related activities.[18]

On May 6, 2002, Dr. Broussard examined Guillory and found that he did not have positive straight leg raising and that his review of the July, 2001 MRI indicated that the disc was not impinging the nerve root.[19] Dr. Broussard reported:

> I personally would not recommend surgery for this gentleman the reason being that while I think he does have a disc that is not mechanically functioning, he is not having objective radicular findings and I am doubtful that surgery is going to improve his situation. It is for those reasons that, at this point given the information forwarded to me, I would consider obtaining the [functional capacity evaluation].[20]

---

[16] Tr. 306.

[17] Tr. 256-259.

[18] Tr. 258-259.

[19] Tr. 370-371.

[20] Tr. 371.

The functional capacity evaluation ("FCE") was conducted from October 14-16, 2002 by Paul Fontana, an occupational therapist.[21] Mr. Fontana recommended discharging Guillory at the light work level, with restrictions on his ability to push/pull, bend, squat, crawl, climb stairs, carry items while climbing stairs, climb ladders, and reach above shoulder level.[22]

On April 26, 2003, Guillory was examined by Dr. Anthony Jase, a resident in internal medicine at LSU Medical Center.[23] Dr. Jase noted that Guillory's range of motion was:

> Lumbar spine 50 degrees flexion and 15 degrees lateral flexion to the right and left. The straight leg raise of 70 degrees on the right and 30 degrees on the left. Sitting straight leg raise of 70 degrees on the right and left. The patient rolled to his side to lie on his back. He was able to stand on his heels but not his toes.[24]

Dr. Jase completed a Medical Source Statement of Ability to Do Work-Related Activities, in which he stated that Guillory could frequently lift 10 pounds, stand and/or walk two hours in an eight-hour day, must alternate sitting and standing to relieve pain or discomfort, has limited ability to push or pull with his upper extremities, and he can only occasionally kneel, crouch, and stoop, and never crawl.[25]

On July 14, 2003, Guillory was examined at University Medical Center complaining of left wrist swelling and pain.[26] Guillory indicated that this was not a new injury and he had not injured his wrist since he fractured it in May, 2002. An x-ray of the wrist showed, "[N]o

---

[21] Tr. 316-359.

[22] Tr. 334-335.

[23] Tr. 360-362.

[24] Tr. 361.

[25] Tr. 363-366.

[26] Tr. 385.

fractures or intraosseous lesions the hand. The distal radial and ulnar fracture fragments have healed in the interim."

On July 16, 2003, Guillory was seen at Tyler Mental Health Center for depression.[27] Guillory indicated that he had gone through a divorce, had trouble seeing his children, was in pain, and he had trouble sleeping. It was recommended that he continue psychiatric consultations for six months.[28]

## 2. Administrative Hearing

At the time of the administrative hearing, Guillory had not had surgery. He had an appointment with University Medical Center, however, a surgical determination had not yet been made. The record does not indicate whether surgery was performed.

Guillory testified that he was 6 feet 6 inches and weighed 395 pounds. He stated that he has constant back pain, pain and swelling in his wrist, and numbness in his right leg.[29] He cannot grab and hold anything with his left hand. He can stand for only 15-20 minutes at a time. He uses a cane for support in case his leg gets weak. He can sit for a couple of hours in an eight-hour day.[30] He can fix a small meal and spends most of his day laying down watching television and sometimes visiting with his mother. He drives to the store a couple of times a week. He has arranged his kitchen so he does not have to bend over to get anything.[31]

Wendy Klamm, a vocational expert, also testified at the hearing:

---

[27] Tr. 391-402.

[28] Tr. 394.

[29] Tr. 414.

[30] Tr. 417.

[31] Tr. 420.

Q. And for all hypotheticals, assume the hypothetical person is the same age, education, past relevant work [inaudible]. The exertional limitation is sedentary with these non-exertional limitations. Push and pull for the right – I'm sorry, the left upper extremity is limited to the – to 10 pounds or less.

A. 10 pounds or less.

\*\*\*

Q. Okay. Occasional kneel, crouch, and stoop.

A. Okay.

Q. Frequently climb and balance.

A. Okay.

Q. Never crawl. Okay. The only manipulative limitation is frequently feel with the left upper extremity. Everything else would be constant as far as left and right goes. Frequently [inaudible] with left upper extremity. And no operation of hazardous machinery.

A. Okay.

Q. And alternate sitting and standing – or alternate changing positions. Do I need to repeat anything for you?

A. I have it.

Q. Okay. All right. Could that person do his past relevant work at this point?

A. No, Your Honor. All the past relevant work was light or heavier.

Q. Would there be other jobs that could be performed within the [inaudible] of the hypothetical?

A. Okay. Given that hypothet, the position of check cashier would fall within all the restrictions. This is a sedentary position, semiskilled, SVP 3... Position of information clerk would fall within similar positions... And the position of repair service clerk would fall within that hypothet...

Q. Okay. Thank you. For the next hypothetical assume the exertional and non-exertional limitations [inaudible] residual functional capacity that is less than sedentary.

\* \* \*

Q. Would there be other jobs that could be performed?

A. Not at less than sedentary.[32]

3. **Listing 1.04**

Guillory argues that he meets the required severity of a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1. § 1.04, which states in pertinent part:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

The ALJ concluded that Guillory does not meet a listed impairment, but his explanation is unclear at best:

> The evidence showed all the requirements of Listing 1.04 at different points in time, but they never had the requisite accompanying requirements of the Listing.[33]

The ALJ's opinion fails to explain why she concluded that Guillory did not meet the requirements. Guillory's interpretation is that the ALJ essentially required that the Listing be met at every doctor's visit. Guillory correctly notes that § 1.00D provides that "Because abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation."

The Commissioner does not offer support for the ALJ's assertion that although all of the requirements of § 1.04 were met, Guillory was not entitled to benefits because the evidence of

---

[32] Tr. 425-427.

[33] Tr. 16.

the necessary requirements were noted at different times. Instead, the Commissioner argues that the ALJ's decision is supported by the fact that two of DDS's consultative examiners, Drs. Odom and Briley, did not specifically state that Guillory meets the requirements of § 1.04.[34] While this is true, the physicians likewise did not state that Guillory did not meet the requirements. More importantly, the reports provide evidence that Guillory did in fact meet the requirements: Dr. Odom noted that Guillory had decreased flexion and side bending; and Dr. Briley noted that the exam was definitely abnormal, with markedly decreased range of motion, positive straight leg raising, depressed ankle jerk on right, unable to extend right great toe, and use of a cane to walk.[35] In addition to these DDS examiners' opinions, Dr. Domingue reviewed Guillory's myelogram and CT scan and concluded that Guillory had a significant anterior compression of the thecal sac at L3-4 with bilateral cutoffs of the exiting nerve roots and bilateral extension into the neural foramina.[36]

The ALJ correctly noted that at different points in time, Guillory did satisfy all of the requirements of § 1.04. Considering this, and that 1.00D acknowledges that abnormal findings may be intermittent and allows for the presence of abnormal physical findings to be established over a period of time, the undersigned concludes that the ALJ erred in failing to find that Guillory meets the requirements of § 1.04. Neither the ALJ, nor the Commissioner offer any support for the proposition that the requirements of § 1.04 must be met at every medical examination. Indeed, the regulations acknowledge that such is not the case. Accordingly, the undersigned finds that substantial evidence does not support the ALJ's decision.

---

[34] Rec. Doc. 12 at p. 7.

[35] Tr. 235-259.

[36] Tr. 306.

Although the finding that Guillory meets the requirements of Listing 1.04 alone is sufficient to award benefits, the undersigned will address the remainder of Guillory's arguments as well.

**Depression and Pain**

Guillory argues that the ALJ erred in failing to find that his depression was a severe impairment, and that the ALJ's residual functional capacity assessment was erroneous because Guillory's pain is constant and unremitting.

A claimant has the burden to establish disability under the Act. 20 C.F.R. §404.1512. To meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. 42 U.S.C. § 423(d)(5)(A). It is the claimant's burden to demonstrate that she suffers from a severe impairment or combination of impairments. 20 C.F.R. §404.1520(c).

In the instant case, the ALJ concluded that Guillory's depression was recent in nature and the record did not include evidence of any limitations posed by it. Guillory has not pointed to, nor does the record contain, any evidence indicating that his alleged depression poses any limitations on his ability to work. Thus, the ALJ did not err in finding that his alleged depression was not severe.

Turning to the issue of pain, and the ALJ's residual functional capacity examination, the ALJ concluded that Guillory could perform a significant range of sedentary work. Relying on the testimony of the vocational expert, the ALJ concluded that Guillory could perform jobs such as cashier, information clerk, and repair service clerk. In so doing, the ALJ discounted Guillory's complaints of pain that requires him to lay down often and otherwise prevents him from performing work.

Under Fifth Circuit jurisprudence, "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985), citing Estran v. Heckler, 745 F.2d 340, 341 (5th Cir.1984). See also Brady v. Heckler, 724 F.2d 914, 920 (11th Cir.1984); Martin v. Heckler, 748 F.2d 1027, 1032 (5th Cir.1984); Davis v. Heckler, 748 F.2d 293, 296 (5th Cir.1984). If an impairment reasonably can be remedied or controlled by medication or therapy, it cannot serve as a basis for a finding of disability. 20 C.F.R. §§ 404.1530, 416.930; Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir.1987).

The ALJ is responsible for assessing the medical evidence and determining the claimant's residual functional capacity. Perez v. Heckler, 777 F.2d 298, 302 (5th Cir. 1985). The ultimate issue of disability is reserved to the Commissioner. The ALJ has discretion to determine the disabling nature of subjective complaints of pain, "at least where the medical evidence is inconclusive." Cook v. Heckler, 750 F.2d 391, 395 (5th Cir. 1985); Jones v. Bowen, 829 F.2d 524, 527 (5th Cir. 1987). The ALJ's determination in this regard is entitled to considerable deference. Id. However, if uncontroverted medical evidence reveals a basis for the subjective complaints of pain, the "ALJ's unfavorable credibility evaluation of a claimant's complains of pain will not be upheld on judicial review . . . at least where the ALJ does not on an articulated basis weigh the objective medical evidence in assigning reasons for discrediting the claimant's subjective complaints of pain." Cook v. Heckler, 750 F.2d at 395.

It is indisputable that objective medical evidence supports Guillory's complaints of disabling pain. Guillory has a herniated disc at L3-4 and his treating physician has recommended

that he undergo diskectomy with pedicle screw fusion.[37] A myelogram and CT scan shows that Guillory's nerve roots are compressed by the herniated disc. There are physical abnormalities during examinations, such as markedly decreased range of motion, positive straight leg tests, loss of reflex, need for assistance in ambulation, in addition to decreased ability to grasp and function with his left hand, and Guillory has hypertension with evidence of end-organ damage.[38] Compound these problems with the fact that Guillory is obese[39], and it is clear that there is objective medical findings which support his allegations of disabling pain.

The overwhelming evidence of record shows that Guillory's condition prohibits him from performing sustained activity because of both the nature of his impairments which are compounded by his obesity, and the pain caused by those impairments. The undersigned finds, therefore, that the ALJ's determination that Guillory could perform sedentary work on a sustained basis is not supported by the record.

*Conclusion*

The undersigned finds that substantial evidence of record supports the ALJ's decision. Accordingly, it is **RECOMMENDED** that the Commissioner's decision be **REVERSED** and that Guillory be awarded benefits consistent with an onset date of January 12, 2001.[40]

---

[37] Tr. 278.

[38] Tr. 362.

[39] Obesity remains a factor to be considered in determining whether an individual is disabled. *See* Social Security Ruling 02-01p. Dr. Briley noted that Gullory was obese, which aggravates all of his problems (6'3", 363.9 pounds) (Tr. 258-259); Dr. Jase noted his obesity (Tr. 361); at the hearing Guillory advised that his weight was 395 pounds.

[40] A judgment entered herein constitutes a "final judgment" that triggers the filing period for an EAJA fee application. Shalala v. Schaeffer, 509 U.S. 292, 113 S.Ct. 2625, 2631 (1993); Freeman v. Shalala, 2 F.3d 552 (5th Cir. 1993).

17

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana, on September 26, 2005.

COPY SENT
DATE 9-26-05
BY oa
TO mom
TLM/PJ

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)